## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **ZAPMEDIA SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:08-CV-104-DF-CE** |
| | § | |
| **APPLE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>REDACTE</u>D ORDER

Before the Court are Plaintiff's Objections to "Report and Recommendation" That Defendant's Motion for Summary Judgment of Non-Infringement of All Asserted Claims of the '414 Patent Be Granted (Dkt. No. 295). Dkt. No. 303. Also before the Court is Defendant's response. Dkt. No. 310. The Court held a hearing on May 10, 2011. *See* 5/10/2011 Hr'g Tr., Dkt. No. 317. Having considered the briefing, oral arguments of counsel, and all relevant papers and pleadings, the Court finds that Plaintiff's objections should be SUSTAINED IN PART and OVERRULED IN PART and that Defendant's motion for summary judgment of non-infringement should be GRANTED.

## I. BACKGROUND

Plaintiff brought suit alleging infringement of United States Patents No. 7,020,704 ("the '704 Patent") and 7,343,414 ("the '414 Patent"). The above-captioned case was referred to United States Magistrate Judge Charles Everingham IV for all pre-trial purposes. *See* Dkt. No. 3. The parties stipulated to non-infringement of the '704 Patent on August 5, 2010, so only the '414 Patent is now at issue. *See* Dkt. Nos. 151 & 157.

Plaintiff asserts Claims 1, 4, 7, 8, 10, and 14 of the '414 Patent (emphasis added):

1. A method of managing access to a plurality of media assets comprising the steps of:

      providing a user with a user account;

      storing references to a plurality of media assets which the user has a license to use; and

      *authorizing over a network a plurality of media player devices with the user account*,

      wherein the plurality of referenced media assets can be accessed by any one of the authorized plurality of media player devices.

4. A media asset management system comprising:

      a server comprising:

      a user account corresponding to at least one user;

      a server database application having at least references to a plurality of media assets associated with the user account; and

      a server application accessible over a network and capable of recognizing *a plurality of media player devices as being authorized with the user account*; and

      an application residing on at least one of the authorized plurality of media player devices and enabling the at least one authorized media player device to access one or more of the media assets associated with the user account.

7. The media asset management system of claim 4, wherein the application residing on at least one of the authorized plurality of media player devices is configured to enable at least one of the plurality of media assets residing on one of the media player devices to be provided to another of the plurality of media player devices.

8. The media asset management system of claim 4, wherein the number of authorized media player devices are limited to a maximum number.

10. A method of managing access to a plurality of media assets comprising the steps of:

      providing a user with a user account;

      allowing the user to license a plurality of media assets;

      associating the licensed plurality of media assets with the user account;

      *authorizing over a network a plurality of media player devices with the user account*;

      providing access to at least one of the plurality of licensed media assets by any one of the plurality of authorized media player devices.

14. The method of claim 10, wherein the number of authorized media player

2

devices are limited to a maximum number.

The parties submitted claim construction briefing, and Judge Everingham held a claim construction hearing on March 11, 2010.  Dkt. Nos. 76, 84 & 88; 3/11/2010 Minute Entry, Dkt. No. 90; 3/11/2010 Markman Hr'g Tr., Dkt. No. 97.  Judge Everingham entered a Memorandum Opinion and Order on claim construction on May 19, 2010.  Dkt. No. 95.  Plaintiff objected to Judge Everingham's Order, and the Court ruled on those objections on August 19, 2010.  *See* 8/19/2010 Order, Dkt. No. 158.

In doing so, the Court modified the construction of "authorizing . . . a plurality of media player devices with the user account" to mean "specifying two or more media players in the user account, whereby referenced media assets can be copied (and/or used) through the user account only by those media players."  *See* 8/19/2010 Order, Dkt. No. 158 at 17-18.  This term appears in asserted Claims 1 and 10, quoted above.  The Court also modified the construction of "a plurality of media player devices as being authorized with the user account" to mean "two or more media players specified in the user account, whereby referenced media assets can be copied (and/or used) through the user account only by those media players."  *See id.* at 14.  This term appears in Claim 4, quoted above.

Defendant filed a motion for summary judgment of non-infringement based on the Court's revised constructions.  As set forth in the February 16, 2011 Report and Recommendation ("R&R"), Judge Everingham recommends granting summary judgment of non-infringement as to all asserted claims.  *See* Dkt. No. 295.

## II.  LEGAL PRINCIPLES

Pursuant to Federal Rule of Civil Procedure ("Rule") 72(b), the Court reviews the

magistrate's report and recommendation on a dispositive motion *de novo*.

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir. 1994) (citing *Liberty Lobby,* 477 U.S. at 248)). The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

"Summary judgment is appropriate in a patent case, as in other cases," under the standard of Federal Rule of Civil Procedure 56. *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). "Although an infringement analysis usually involves both issues of law and questions of fact, summary judgment of noninfringement may still be proper." *Phonometrics, Inc. v. N. Telecom, Inc.*, 133 F.3d 1459, 1463 (Fed. Cir. 1998). Where "the composition of the allegedly infringing process or product is undisputed," "literal infringement

4

collapses into claim construction a matter of law amenable to summary judgment." *See Desper Prods., Inc. v. Osound Labs., Inc.*, 157 F.3d 1325, 1332-33 (Fed. Cir. 1998).

"Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005); *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) ("Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial.").

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc. v. Bennetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). "As a matter of law, the absence of a single claim limitation from the accused product precludes literal infringement." *Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-CV-358, 2005 WL 3408029, at *2 (E.D. Tex. Dec. 12, 2005) (Ward, J.).

### III. THE PARTIES' POSITIONS

As set forth in the R&R, Defendant submitted evidence that unauthorized devices can copy and use referenced media assets through the user account. For example, Defendant's expert used iTunes (the accused instrumentality) to download media assets to an unauthorized desktop computer. Defendant's expert also used Apple TV a set top box sold by Defendant that cannot be "authorized" in an iTunes user account to play media assets from an authorized media player. Judge Everingham analyzed Plaintiff's arguments in opposition, found them improper

under the Court's claim construction, and concluded that Plaintiff had failed to raise any genuine

issues of material fact.

Plaintiff objects that Defendant's tests "were not representative of the way iTunes is used

in the real world." Dkt. No. 303 at 1. Plaintiff also argues that Judge Everingham weighed

evidence and improperly ruled on two factual disputes. First, Plaintiff argues that none of the

downloads by Defendant's expert were "through the user account," as required by the Court's

claim construction, because the downloads were from ████████████████████████████

███████████████████████████ *Id.* at 1, 9-10 & 16. Plaintiff urges that for

copying or use to be through the user account, "the copy or use of the asset must *traverse* the user

account." *Id.* at 12 (emphasis added). Plaintiff submits that only *purchases*, not downloads,

involve interaction with the user account. *Id.* at 14. Second, Plaintiff argues that "playing a

movie on Apple TV d[oes] *not* traverse the user account." *Id.* at 2. In support, Plaintiff cites the

Court's statements in its August 19, 2010 Order that the claims put no limitation on "whether

other, unauthorized media player devices may obtain assets indirectly once a user has obtained

them through the user account." *Id.* at 18. Plaintiff submits that ████████████████ relied upon

by Judge Everingham may be transmitted to or from a desktop computer associated with the

Apple TV. *Id.* at 20. Plaintiff argues that the assertions of Defendant's expert to the contrary are

not supported by any competent evidence. *Id.* at 20-25. Plaintiff also notes that Defendant's

expert's opinions regarding Apple TV only relate to movies licensed through iTunes, not music,

videos, television shows, audiobooks, or any other type of media asset. *Id.* at 25-26.

---

███████████████████████████████████████████████████████████████████

Defendant responds that Judge Everingham properly noted that the "user account" is the iTunes Store account, which includes a username and password, as previously set forth by Plaintiff's own expert. Dkt. No. 310 at 3. As to the download by an unauthorized computer, Defendant submits Judge Everingham properly "recited the undisputed fact that ███████ ████████████████████████████████████████████████████████████ ██████████████ *Id.* at 4 (emphasis omitted). Defendant submits that copying is "through the user account" because ███████████████████████████████████████ ██████████████████████████████ regardless of whether that content is actually downloaded from ███████████████████████████ servers. *Id.* at 11. Defendant submits that Judge Everingham properly rejected Plaintiff's attempt to narrow the definition of "user account" to exclude username and password by referring only to information contained in certain account information ████████████████ *Id.* at 16-17. Defendant further submits that "before [an] 'unauthorized' desktop is allowed to download songs or movies from the iTunes store, █████████████ (which is part of the 'user account' according to any of [Plaintiff's] latest theories) ████████████████████ 'authorized' or 'unauthorized.'" *Id.* at 17.

As to Apple TV, Defendant submits that its expert "showed that in order for the Apple TV to obtain the ████ necessary to play certain purchased video content] through the user account, ██████████████████ to see if the source of the media is an 'authorized' device." *Id.* at 18; *see also id.* at 19. As to Plaintiff's argument that the ████ does not come from one of Defendant's iTunes Store servers, Defendant responds that regardless of where the ████████████████████████████████████

██ *d.* at 21.  Defendant also responds that its expert has relied on competent evidence, as well as his own observations.  *Id.* at 21-22.  Defendant further argues that use of Apple TV is not mere "forwarding" of an asset because ████████████████████████████████████ ██████████████ device supplying the media to the Apple TV is an 'authorized' device."  *Id.* at 22.  Finally, Defendant urges the Court to reject Plaintiff's "last ditch effort" to "redefine the accused 'media assets' to exclude movies" and, in any event, Apple TV can stream music from an authorized computer "through the user account."  *Id.* at 22-23.

During oral argument, Plaintiff emphasized a statement by Defendant's expert that during a download, ███████████████████████████████████████ ██████████████ Dkt. No. 303 at 10 (quoting Ex. F at 19:14-16).  Plaintiff urged that in recommending grant of summary judgment, Judge Everingham took the Court's revised claim construction too far by finding that *any* contact with the iTunes Store is sufficient to find that copying or use is "through the user account."

Defendant responded that its interpretation of "through the user account" is consistent with Plaintiff's own infringement theory as to Defendant's "Home Sharing" feature, which allows users to share media assets among computers on a local area network.  *See, e.g.,* 8/27/2011 First Supplement to Expert Report of Hugh Smith, Ph.D., Dkt. No. 303, Ex. E at ¶¶ 26 ("Home Sharing helps you manage your family's iTunes collection, by copying iTunes Store purchases among computers in your home"; "an iTunes Store account is required to use Home Sharing. Use the same account for all shared computers.") (citation omitted) & 29 ("In the case of Home Sharing, █████████████████████████████████ ██████████████████████████████████████████

███ In those infringement contentions, Defendant submits, Plaintiff relied on communication with the iTunes Store to prove infringement even though the media assets were transmitted directly from one computer to another on the user's local area network. Defendant thus argues that although Plaintiff criticizes Defendant's interpretation of "through the user account," Defendant is using the same interpretation that Plaintiff itself has previously used.

## IV. DISCUSSION

As noted above, all of the asserted claims require that "referenced media assets can be copied (and/or used) through the user account only by those media players" that are "specified in the user account." *See* Dkt. No. 158 at 14 & 17-18.[2] Defendant presents evidence of scenarios in which it argues the accused instrumentality, iTunes, allows "referenced media assets [to] be copied (and/or used) through the user account" by devices that are *not* "specified in the user account." Defendant thereby seeks to prove non-infringement by proving that iTunes does *not* limit copying and use to only the specified devices. Dkt. No. 310 at 8 ███

███████████████████████████████████████

███████████████████████ Thus, the question presented is whether Plaintiff has raised any genuine issues of material fact as to whether iTunes *does* limit copying or

---

[2] Worth noting, Plaintiff itself proposed that copying be included within the meaning of these limitations. *See* R&R, Dkt. No. 95 at 14 ("Alternatively, Zapmedia contends that the term should be defined as 'two or more media players specified in the user account, whereby referenced media assets can be copied and/or used by the aforementioned media players.'"); Pl.'s Opening Claim Construction Brief, Dkt. No. 76 at 36 ("[T]he patent specification shows that the phrase "digital rights" or "access rights" refers in each case to the ability to retrieve and/or use a digital media asset."); *see also* '414 Patent at 11:20 26 ("For example, if a user owns five client media player devices capable of running the playback engine, the user will have *access* to those assets from one client media player device to another in seamless fashion. This example illustrates a capability of the system of the present invention to *move or copy* an asset from any home, car, portable, computer, or other computing device.") (emphasis added). Also of note, during oral argument Plaintiff suggested that the Court's modifications of Judge Everingham's constructions were "suspect" and "opened up something of a hornet's nest here," but Plaintiff did not justify vacating the modifications or applying any other constructions. *See* Dkt. No. 317 at pp. 5 7. Plaintiff mainly argued that Judge Everingham "went overboard" and applied the modified constructions too broadly. *Id.* at pp. 7 8 & 39 40.

use to only the specified devices.

Defendant presents two types of scenarios, one which addresses copying a media asset and one which addresses using a media asset.  The first type of scenario involves downloads by a desktop computer that is ███████████████████ *i.e.*, an "unauthorized" computer.  Defendant submits that the ability of an unauthorized computer to download media assets demonstrates that iTunes does not limit copying to authorized devices.  The second type of scenario involves Apple TV, which cannot be "authorized" in an iTunes account but can nonetheless play media assets that a user has downloaded from iTunes.  Defendant submits that such activity by Apple TV demonstrates that iTunes does not limit use to authorized devices.  The Court addresses these two types of scenarios in turn.

## A.  Unauthorized Desktop Computer

As Plaintiff's expert agrees, a media asset purchased through iTunes desktop software is a "referenced media asset" as recited by the asserted claims, regardless of whether the desktop computer that made the purchase is authorized or unauthorized.  9/13/2010 Smith dep., Dkt. No. 310, Ex. 2 at 55:23-56:21.

During oral argument, Defendant emphasized the "pre-order" scenario, in which a user uses an authorized computer to order a media asset *before* it is available for download.  *See also* 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 310 at Exs. 1D & 1E.  As examples, a user might pre-order a music album or a movie before it is released.  *See id.*  As another example, a user might purchase a "season pass" for an ongoing season of a television show.  *See* 10/27/2010 Kelly dep., Dkt. No. 303, Ex. H at 38:3-41:7.  When the media asset becomes available, the user can use an

unauthorized computer to obtain a copy of the asset. *See id.*; 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 310 at Exs. 1D & 1E. Defendant acknowledged during oral argument that the unauthorized computer might not be able to actually use the asset if it is encrypted with digital rights management ("DRM") protection. *See also id.*, Dkt. No. 310, Ex. 1E at 19. But even in such cases, an unauthorized computer could nonetheless obtain a copy of the asset. *Id.* at 17-18. Further, if the asset contains no DRM protection, the unauthorized computer would indeed be able to use the asset. *See id.*, Ex. 1D at 16-17.

Plaintiff submitted during oral argument that content is *purchased* "through the user account" but that any copying or use is done ███████████████████████████████ ████████████████ Plaintiff argues that because ████████████ are not part of the "user account," copying from ████████████ cannot be "through the user account." On one hand, Plaintiff is correct that the user's computer obtains the actual media asset from ██████████████ *See, e.g.,* 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 303, Ex. G at ¶ 22 ██████████████████ ███████████████████████████████████ 11/1/2010 Kelly Decl., Dkt. No. 310-1 at ¶ 10. On the other hand, although ███████████████████ ██████████ those servers host media content *for* Defendant. *See id.*; *see also* Dkt. No. 303 at 9 n.8; Dkt. No. 310 at 5 n.6.

But even if ███████████████████████████████████████████████ a user must obtain a URL from the iTunes Store in order to obtain a media asset ████████████ ████████ *See* 9/24/2010 Kelly dep., Dkt. No. 303, Ex. F at 185:1-186:13 & 188:18-189:15. One of

Defendant's servers provides this URL ██████████████████████████████

█████████████████████████ *See also id.*  The user's computer then uses the URL ██

██████████████████████████████████████ *See id.*  Plaintiff does

not appear to dispute these characterizations.  *See* Dkt. No. 303 at 7 & 13 █████████████

████████████████████████████████████████████████

███████████████ *see also* Fed. R. Civ. P. 56(e) (court can consider undisputed facts on

summary judgment).  Plaintiff also does not dispute that the iTunes Store will only provide██

██████████████████ Tunes client has been logged into the user account on the iTunes

Store.  *See* 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of

United States Patent No. 7,343,414, Dkt. No. 303, Ex. G at ¶ 23 ██████████████████

████████████████████████████████████████████████

████████████████████ *see* Dkt. No. 303; *see also* Fed. R. Civ. P. 56(e)

(court can consider undisputed facts on summary judgment).

Because the parties agree on how iTunes operates in this regard, the dispute about

whether downloading occurs "through the user account" turns on legal questions of claim

construction rather than on any factual issue.  *See Desper Prods., Inc. v. Osound Labs., Inc.*, 157

F.3d 1325, 1332-33 (Fed. Cir. 1998) (noting that where "the composition of the allegedly

infringing process or product is undisputed," "literal infringement collapses into claim

construction   a matter of law   amenable to summary judgment.").  The Court has a duty to

resolve claim construction disputes.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,

521 F.3d 1351, 1362 (Fed. Cir. 2008).

Resolution of these disputes is best framed by Plaintiff's argument that the R&R

disregarded the following three items of evidence:

- the copying of the media asset  is
received by the desktop PC;

- in the copying process, 
hich comprise a user account record; and

- ZapMedia's own expert testimony that the relevant "user account"
are not traversed as part of
any downloading.

Dkt. No. 303 at 13 (citation omitted).  As to the first two bullet points, by attempting to segregate

out the interaction ████████████████ Plaintiff interprets the word "copied" in the Court's

construction too narrowly.  Plaintiff relies on deposition testimony by Defendant's expert that

refers to "copying" that occurs only after ████████████████ Dkt. No. 303 at 9, 12 &

16.  Although a media asset cannot be obtained ████████████████ is

obtained, ████████████ s a necessary part of copying.  As Judge Everingham properly

noted, the asserted claims refer to "references" to media assets or "access" to media assets, and

████████████ that provide access. Dkt. No. 295 at 9.  No party has suggested that an

iTunes user could obtain a media asset ████████████████████

from the iTunes Store.  *See* Dkt. No. 317 at 10:13 (Plaintiff argued as to requesting a copy of an

asset that "It's got to get these ████████" *i.e.*, the URL).  The Court therefore expressly

REJECTS Plaintiff's interpretation that the process of copying, in the Court's constructions of

the authorization-related terms, excludes the step of ████████████████

As to the third bullet point, above, the parties dispute the meaning of "user account."

Judge Everingham construed this term in the original Memorandum Opinion and Order on claim

construction.  Dkt. No. 95 at 11-13.  The parties did not at that time dispute whether the user

account included the username and password, at least not by the time of claim construction

proceedings.  *See* 3/11/2010 Markman Hr'g Tr., Dkt. No. 97 at 20:10-16 ("The specification

talks about conferring a password and a name to the user to have that right of access into the

system as a member.  [Defendant] argued against including that when [Plaintiff] proposed that

because they said that was inferring characteristics from the preferred embodiment into broader

claim language, so [Plaintiff has] taken that out.").  Instead, the parties disputed where the user

account resides and whether or not the user account must specify *all* of the media players that are

permitted to access the account's media assets.  *See id.* at 12.  Judge Everingham construed "user

account" to mean "a record indicating that the user has the right to access the media assets, and

indicating which media player devices may access referenced media assets."  *Id.* at 13.  Upon

objections to Judge Everingham's construction, the Court sustained Plaintiff's objection to the

word "devices," plural, which Plaintiff urged would improperly exclude embodiments having

only one media player device.  *See* Dkt. No. 158 at 7-9.  The Court therefore modified the

construction to replace "which media player devices may" with "one or more media player

devices that may."  *Id.* at 9.

Now the parties again dispute the construction of "user account."  Plaintiff argues that

because the Court's construction refers to "a record," the "user account" is limited to certain

tables that "reside[] ██████████████████████████████████████████████[3]



Dkt. No. 303 at 3.  Specifically, these ██████████████████████████████

██████ which list media assets that a user has purchased, and the ██████████████████

██████████ media player devices.  *Id.*  Defendant responds that the "user account" includes

the username and password.  Dkt. No. 310 at 2-3.

Defendant at one time purportedly "argued against" including username and password in

the construction of "user account."  *See* 3/11/2010 Markman Hr'g Tr., Dkt. No. 97 at 20:10-16.

More recently, however, Plaintiff itself included username and password within the term "user

account" in the briefing on Plaintiff' Motion for Summary Judgment of Infringement of Claims

1, 10 and 14 of U.S. Patent No. 7,343,414 (filed September 9, 2010, after the Court modified the

claim constructions on August 19, 2010, *see* Order, Dkt. No. 158), stating: "The user account is,

therefore, a 'record,' meaning a collection of user-related data, including user credit card

information, address information, username and password."  Dkt. No. 183 at 13; *see also*

3/11/2010 Markman Hr'g Tr., Dkt. No. 97 at 20:10-12 ("The specification talks about conferring

a password and a name to the user to have that right of access into the system as a member.").

Plaintiff's apparent reversal in position warrants clarification of the construction.

As Judge Everingham noted in the R&R, ""[u]ser account' is described in the

specification as follows: 'Initially, a user becomes a member or subscriber to a portal . . . . Once a



membership exists, a virtual private media asset database is created and associated with the user's login account and password in the portal." Dkt. No. 95 at 11; '414 Patent at 10:26-31.  On one hand, this disclosure of the "user's login account and password" might suggest that the "password" is not part of the "account."  On the other hand, this disclosure states that both the "login" and the "password" and "associated" with the virtual private media asset database.

On balance, the best reading of the specification is that both a "login" (which the parties' refer to as a "username") and a "password" are part of the user account.  To resolve the parties claim construction dispute, the Court therefore modifies its construction of "**user account**" to mean "**a record, including a login and password, indicating that the user has the right to access the media assets and indicating which media player devices may access referenced media assets.**"  The Court reaches this construction regardless of what the parties' previous positions, discussed briefly above, may have been.

In turn, "through the user account" in the Court's construction of the authorization-related terms includes operations that require a user, by way of a username and password, to log in to a user account of the iTunes Store.  Because a user must use a username and password to log in to an iTunes Store account before ███████████████████████████████████ ███████████████████████████████ download the media asset as discussed above, downloading a media asset ███████████████ is "copy[ing] . . . through the user account." Finally, Plaintiff does not dispute that this operation can be done by an unauthorized computer. *See* Dkt. No. 270 at 8 (in Plaintiff's response to Defendant's motion for summary judgment, ████████████████████████████████████████████ a user can log into his or her iTunes account from an 'unauthorized' desktop computer, purchase an 'iTunes Plus' asset

16

or a DRM protected asset, and download an encrypted file to the 'unauthorized' desktop computer.") (emphasis omitted); *see also* 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 310 at Exs. 1D & 1E; Fed. R. Civ. P. 56(e) (court can consider undisputed facts on summary judgment). Plaintiff therefore fails to raise any genuine issue of material fact as to whether iTunes meets the "authorizing" limitations of the asserted claims, which require that only authorized devices can copy and/or use media assets through the user account. *See* Dkt. No. 158 at 14 & 17-18.

## B. Apple TV

Apple TV is a type of "set top box" sold by Defendant that can store and play media assets and that can also "stream" media assets from another source, such as a desktop computer. Judge Everingham properly found that Apple TV is a "media player device" for purposes of the asserted claims because Claims 3, 6, and 12 of the '414 Patent recite a "cable set top box" and a "satellite set top box" as types of media player devices. *See* Dkt. No. 295 at 11. An Apple TV device cannot be "authorized" in an iTunes user account because Apple TV devices ███████ ████████████████████████████████████████████████████████████████ ████ provided to an AppleTV by copying or streaming from iTunes on a desktop." 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 303, Ex. G at ¶ 71. Defendant's expert also confirmed that the Apple TV device used in his testing ██████████████ the alleged user account." 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 310, Ex. 1B at 23-24 & Ex. 1C at 21-22.

Plaintiff argues that Defendant's expert fails to cite any evidence for his assertions that

Apple TV █████████████████████████████████████████████████

████████████████ Dkt. No. 303 at 20.  Plaintiff argues that "[Defendant] has produced no

technical documentation to the Court describing the transmission ████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ which are independent of the iTunes store

account(s))." *Id.*  In other words, Plaintiff argues that streaming or copying a media asset to an

Apple TV does not qualify as use by an unauthorized device because the authorized desktop

computer is the relevant "media player device" for purposes of the asserted claims.  That is,

Plaintiff argues the Apple TV is a mere "peripheral" device. *Id.* at 4 n.3 & 8.  Plaintiff also

submits that ████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ that hold a user's iTunes store

account. *Id.* at 23; *see also* n.3, *supra*.  Plaintiff's expert challenges the assertion of Defendant's

expert that "MZMachine must first be checked to see if the source of the media asset is an

'authorized desktop.'"  *See* 12/3/2010 Smith Decl., Dkt. No. 303, Ex. B at ¶¶ 19-39.

Indeed, Defendant's expert's experimental write-up about streaming a DRM-protected

movie from a desktop computer to an Apple TV asserts tha ██████████████████████

██████████████████████████████████ 9/17/2010 Expert Report

of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt.

No. 310, Ex. 1C at 15.  Of note, the Apple TV in the experiment was "set up" by inputting a

"passcode" from the Apple TV into the iTunes client on the desktop computer. *Id.* at 12.  The

screenshot in the write-up contains no direct evidence of ████████████████████████

and for support, Defendant's expert cites his expert report. *See id.* at 15 (citing 9/17/2010 Expert

Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No.

7,343,414, Dkt. No. 310, Ex. 1A at ¶¶ 69-71). Defendant's expert's report, in turn, quotes

deposition testimony stating that ██████████████████████████████ 9/17/2010

Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No.

7,343,414, Dkt. No. 310, Ex. 1A at ¶ 70 (quoting 7/16/2010 Farrugia dep. at 130:3-132:18).

Defendant's evidence in support of its motion is not clear on what interaction, if any, occurs

███████████████████████████████████ user accounts for the iTunes Store.

*See id.*███████████████████████████████████████████

███████████████████████████████ *see also* 7/16/2010 Farrugia dep.,

Dkt. No. 310, Ex. 6 at 17:2-24 & 53:4-10 ████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (emphasis added).

Neither the experimental write-up nor the expert report definitively establishes that the

Apple TV (rather than the associated desktop computer) ████████████████████

████████████ rather than from some other source) or that the iTunes Store user account is

necessarily involved. Moreover, Plaintiff's expert presents contrary opinions. *See, e.g.,*

12/3/2010 Smith Decl., Dkt. No. 303, Ex. B at ¶¶ 16-18 (declaring that one of Defendant's

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████ Genuine

issues of material fact thus remain.

Defendant's expert's experiment on "syncing" a DRM-protective movie from a desktop computer to an Apple TV differs slightly from the streaming experiment. According to Defendant's expert, this "sync" operation created a copy of the movie on the Apple TV, which could then be played by the Apple TV. 9/17/2010 Expert Report of Dr. John P.J. Kelly Regarding Non-Infringement of United States Patent No. 7,343,414, Dkt. No. 310, Ex. 1B at 14, 19 & 21-22. Here again, the Apple TV in the experiment was "set up" by inputting a "passcode" from the Apple TV into the iTunes client on the desktop computer. *Id.* at 16. For the same reasons discussed as to the "streaming" experiment, discussed above, Defendant fails to definitively show that this "sync" process does not simply treat the Apple TV as a mere "peripheral" of the desktop computer.

In sum, genuine issues of fact remain as to whether streaming or syncing from an authorized desktop computer to an Apple TV is, for purposes of the asserted claims, more properly viewed as a use by the authorized desktop computer rather than by the Apple TV. In other words, if the relevant use is by the desktop computer rather than the Apple TV, then iTunes may be satisfying the "through the user account" limitation by limiting use to the authorized desktop computer. On balance, "[u]pon consideration of all available evidence, this question devolves into a form both familiar to    and intractable for    the courts: the cliched 'battle of the experts.'" *Regents of Univ. of Cal. v. Dako N. Am., Inc.*, 615 F. Supp. 2d 1087, 1099 (N.D. Cal. 2009) (citation omitted); *see also Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325,

1340-41 (Fed. Cir. 2010) (finding that "factual disputes" "between the experts" "were properly

for the jury to decide").

Having found genuine issues of material fact as to Apple TV, the Court need not reach

Plaintiff's argument that "movies would not need to be included in the class of 'media assets' . . .

as to which the media management system infringes," such that "[a]ll other assets   music,

videos, TV shows, audiobooks   would still qualify as referenced media assets and the

infringement analysis holds."  Dkt. No. 303 at 25-26.

## C. Summary

As discussed in Section IV.B., above, genuine issues of material fact remain as to

whether an Apple TV device can be an unauthorized device that uses referenced media assets

through the user account.  Plaintiff's objections to the R&R's reliance on the Apple TV

experiments are therefore SUSTAINED.  Nonetheless, as discussed in Section IV.A., above,

Defendant has established that an unauthorized desktop computer can copy referenced media

assets through the user account, and Plaintiff's objections are OVERRULED in that regard.

Plaintiff therefore fails to raise any genuine issue of material fact as to whether iTunes meets the

authorization-related limitations of the asserted claims, which require that only authorized

devices can copy and/or use media assets through the user account.  *See* Dkt. No. 158 at 14 &

17-18.  Defendant's motion for summary judgment of non-infringement should therefore be

GRANTED.  To the extent Plaintiff's objections have not been sustained, the Court ADOPTS

the R&R.

## V.  CONCLUSION

Plaintiff's Objections to "Report and Recommendation" That Defendant's Motion for

Summary Judgment of Non-Infringement of All Asserted Claims of the '414 Patent Be Granted (Dkt. No. 303) are hereby **SUSTAINED IN PART** and **OVERRULED IN PART** as set forth above.  To the extent Plaintiff's objections have not been sustained by this Order, the Court hereby **ADOPTS** the Report and Recommendation.

Defendant's Motion for Summary Judgment of Non-Infringement of All Asserted Claims of the '414 Patent (Dkt. No. 247) is hereby **GRANTED**.

The Court hereby expressly **REJECTS** Plaintiff's interpretation that the process of copying, in the Court's constructions of the authorization-related terms, excludes the step of obtaining a URL from the iTunes Store.

The Court hereby **MODIFIES** its construction of "**user account**" to mean "**a record, including a login and password, indicating that the user has the right to access the media assets and indicating which media player devices may access referenced media assets**."

The Court further hereby **ORDERS** the parties to confer and to submit to the Court, within 21 days of this Order, a proposed redacted version of this Order with confidential information redacted as the parties feel appropriate.  If the parties cannot agree, the parties should submit competing proposed redacted versions.

**IT IS SO ORDERED.**

**SIGNED this 20th day of July, 2011.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE